UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
YUELIANG ZHANG, HUANHONG GU, and :
JINHENG ZHANG :
 :
 Plaintiffs, :
 : **MEMORANDUM & ORDER**
 -against- : 19-cv-5370 (DLI)
 :
CHAD WOLF, in his official capacity :
as acting Secretary of Homeland Security, *et al.*, :
 :
 Defendants. :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

      Plaintiffs Yueliang Zhang, Huanhong Gu and Jinheng Zhang ("Plaintiffs") bring this action pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, against Defendants Chad Wolf,[1] in his official capacity as Acting Secretary, U.S. Department of Homeland Security, Kenneth Cuccinelli, in his official capacity as Senior Official Performing the Duties of the Director of the United States Citizenship and Immigration Services ("USCIS"), and Thomas Cioppa, in his official capacity as District Director, USCIS New York Field Office (collectively, "Defendants"), alleging that the ongoing failure to timely adjudicate their joint asylum application violates the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, the APA, and the Due Process and Equal Protection Clauses of the Fifth Amendment. *See*, Amended Complaint ("Compl."), Dkt. Entry No. 2 ¶¶ 31-48. Plaintiffs seek the entry of declaratory judgment pursuant to 28 U.S.C. § 2201, and to compel Defendants to adjudicate Plaintiffs' asylum application. *See*, Compl. ¶¶ 43-44.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Chad Wolf has been substituted for Kevin McAleenan and Kenneth Cuccinelli has been substituted for James McCament.

Defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See*, Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Dkt. Entry No. 13. Plaintiffs opposed. *See*, Mem. in Opp'n to Defs.' Mot. to Dismiss ("Opp'n"), Dkt. Entry No. 17. For the reasons set forth below, the motion to dismiss for lack of subject matter jurisdiction is denied and the motion to dismiss for failure to state a claim is granted.

## BACKGROUND

The INA provides that immigrants may apply for asylum within one year of arrival in the United States. *See*, 8 U.S.C. § 1158(a). The timeline for processing asylum applications is governed by § 1158(d)(5) of the INA, which provides, among other things, "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." *Id.* § 1158(d)(5)(iii). Section 1158(d)(7) of the INA contains a "[n]o private right of action" clause which provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.* § 1158(d)(7).

By the end of 1994, the number of asylum applicants exceeded the capacity of the Immigration and Naturalization Service ("INS"), the agency then responsible for adjudicating asylum applications, to adjudicate the majority of applications in accordance with the timelines then in place. *See*, News Release, INS, Asylum Reform: Five Years Later (Feb. 1, 2000),

https://www.uscis.gov/sites/default/files/document/news/Asylum.pdf.[2]  The result was a growth of the pending asylum applications "backlog" to over 400,000.  *See*, *Id.*

To address this issue, the INS began in 1995 to process asylum applications on a "Last-In-First-Out" ("LIFO") basis, in which the most recent applications were adjudicated first and applications more than 21-days old were processed starting with newer filings and working back toward older filings.  *See*, USCIS to Take Action to Address Agency Backlog, Jan. 31, 2018 ("USCIS Announcement"), Compl. Ex. D.  By 2012, the backlog of pending affirmative asylum applications had decreased to 15,526.  *See*, 2020 USCIS Ombudsman Ann. Rep. 43 ("Ombudsman Rep."), fig. 4.3, https://www.dhs.gov/sites/default/files/publications/20_0630_cisomb-2020-annual-report-to-congress.pdf.  The LIFO scheme remained in effect until December 2014, at which time the USCIS reverted to a first-in-first-out ("FIFO") application processing policy.  *See*, USCIS Announcement.  Under the FIFO processing scheme, the backlog of pending asylum applications grew to over 300,000 in 2018, at which point the USCIS re-implemented the LIFO policy.  *Id.*  Under the current LIFO policy, applications pending longer than 21 days are placed in a backlog where they are processed in reverse order as agency resources permit.  *Id.*

Plaintiffs are citizens of the People's Republic of China.  Compl. ¶ 2.  Plaintiffs' asylum application was received by USCIS Queens/Jamaica office on February 26, 2016.  *Id.* Ex. A, Form I-797C, Notice of Action.  At present, it has been more than four years since Plaintiffs submitted their asylum application.  *Id.*

---

[2] In deciding a Rule 12(b)(6) motion, a court may "take judicial notice of documents in the public record, which includes records and reports of administrative bodies."  *See*, *Volpe v. Nassau Cty.*, 915 F. Supp.2d 284, 291 (E.D.N.Y. 2013) (citations omitted).  In deciding the instant motion, the Court takes judicial notice of an Immigration and Naturalization Service News Release dated February 1, 2000, and the 2020 USCIS Ombudsman Annual Report to Congress, dated June 30, 2020.

3

**LEGAL STANDARD**

**I.      Federal Rule of Civil Procedure 12(b)(1)**

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "Federal subject matter jurisdiction is available only when a 'federal question' is presented, or when plaintiff and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000." *Petway v. New York City Transit Auth.*, 2010 WL 1438774, at *2 (E.D.N.Y. Apr. 7, 2010), *aff'd*, 450 F. App'x 66 (2d Cir. 2011). "To invoke federal question jurisdiction, the plaintiff's claim(s) must arise 'under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

**II.     Federal Rule of Civil Procedure 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

4

*Iqbal* requires more than "'a formulaic recitation of the elements of a cause of action.'" *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555). Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). On a motion to dismiss, a court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See*, *Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). Courts may consider only the complaint itself, documents attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession, or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken.[3] *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## DISCUSSION

### I.   Subject Matter Jurisdiction

The Mandamus Act provides district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Similarly, the APA requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," and that courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). Judicial review is barred under the APA in cases where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* §§ 701(a)(1), (2). The presumption favoring judicial review of administrative action is well settled and applied to

---

[3] Defendants' motion relies heavily on a declaration filed in support thereof, *See*, Declaration of Andrew Davidson, ("Davidson Declaration"), Dkt. Entry No. 14. Defendants provide no explanation as to how the Court may rely properly on such a declaration in deciding a Rule 12(b)(6) motion to dismiss. Accordingly, the Court declines to consider the Davidson Declaration in deciding the motion to dismiss.

5

legislation concerning immigration. *See*, *Kucana v. Holder*, 558 U.S. 233, 251 (2010). It is presumed that Congress legislates with this presumption in mind. Accordingly, a party challenging the presumption must present clear and convincing evidence to overcome it. *Id.*

Defendants contend that INA § 1158(d)(7) strips the court of subject matter jurisdiction to hear Plaintiffs' claims. *See*, Defs.' Mem. at 14. As an initial matter, § 1158(d)(7), titled "No private right of action," provides only that the INA does not "create any substantive or procedural right or benefit," and does not strip the court of jurisdiction. 8 U.S.C. § 1158(d)(7); *See also*, *L.M. v. Johnson*, 150 F. Supp.3d 202, 210 (E.D.N.Y. 2015) ("Section 1158(d)(7) does not strip this court of subject matter jurisdiction or preclude judicial review."); *Ruan v. Wolf*, 2020 WL 639127 at *4 (E.D.N.Y. Feb. 11, 2020) ("Section 1158(d)(7) is not a jurisdiction-stripping provision.").

Moreover, other sections of the INA do contain jurisdiction stripping provisions, demonstrating that Congress chose not to include such a provision in § 1158(d)(7). *See*, *L.M.*, 150 F. Supp.3d at 210 (noting that § 1158(d)(7) is "unlike other sections of the INA, which specifically preclude judicial review of a determination made by the Attorney General"); *See also*, *e.g.*, 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."). "A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (distinguishing jurisdiction stripping provisions of the Detainee Treatment Act ("DTA") from non-jurisdiction stripping provisions of the DTA).

Next, Defendants contend that the "USCIS's decision to institute the LIFO scheduling system represents the agency's judgment – informed by historical experience," and "is thus unsuitable for judicial review and therefore committed to agency discretion under 5 U.S.C. § 701(a)(2)." *See*, Defs.'

6

Mem. at 24-25. This argument is meritless. As an initial matter, "numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications." *Hoo Loo v. Ridge*, 2007 WL 813000 at *3 (E.D.N.Y. Mar. 14, 2007). Moreover, it is well established that "granting or denying asylum applications is committed to agency discretion, but that does not mean USCIS has discretion to decline to adjudicate applications at all." *Ruan*, 2020 WL 639127, at *4; *See also*, *Kim v. Ashcroft*, 340 F. Supp.2d 384, 393 (S.D.N.Y. 2004) ("[T]he [USCIS] simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."). Indeed, "the overwhelming majority of district courts" take the view that "the timing of [asylum] adjudication may be subject to judicial review under the APA." *Ruan*, 2020 WL 639127, at *4

Defendants fail to establish that INA § 1158(d)(7) strips the Court of jurisdiction to hear Plaintiffs' claims or that the issue of whether or not to adjudicate an asylum application *at all* is committed by law to agency discretion. Accordingly, the motion to dismiss for lack of subject matter jurisdiction is denied.

**II.     Failure to State a Claim**

    **A. Plaintiffs' Mandamus Act Claim**

The Mandamus Act provides that "district courts shall have original jurisdiction of any action . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The requirements for issuance of a writ of mandamus are: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (citation omitted).

7

Plaintiffs contend that they have a legally enforceable right to have their asylum application "adjudicated by the agency without undue delay." Compl. ¶ 35. However, "[i]t is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action," as the Mandamus Act gives courts "the power to 'compel an officer or employee of the United States or any agency thereof to perform a duty owed *to the plaintiff*.'" *Pesantez v. Johnson*, 2015 WL 5475655, at *2 (E.D.N.Y. Sept. 17, 2015) (emphasis in original) (quoting 28 U.S.C. § 1361). As discussed above, the INA provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. 1158(d)(7). Accordingly, Plaintiffs fail to state a claim for relief under the Mandamus Act.

### B. Plaintiffs' APA Claim

The APA provides a cause of action where agency action is unreasonably delayed. *See*, 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). The APA further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). "In cases where the petition is seeking to compel action by immigration authorities, courts utilize the six-factor test articulated in *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ('*TRAC*') to determine whether relief under the APA is warranted." *Hoo Loo*, 2007 WL 813000, at *4. "The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason;'
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on

8

>agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Hoo Loo*, 2007 WL 813000, at *4 n.4 (quotation marks and citation omitted). "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Ruan*, 2020 WL 639127 at *5 (citation omitted).

Addressing the first *TRAC* factor, Plaintiffs contend that the adoption of the LIFO system deprives Plaintiffs of a "concrete timeline" and provides instead a "roadmap for further delay" that "cannot be said to be governed by any 'rule of reason.'" *See*, Opp'n at 5. Numerous courts have found that the USCIS's use of LIFO in the asylum context is a rule of reason. *See*, *e.g.*, *Xu*, 434 F. Supp.3d at 53 ("[T]he Court finds that the LIFO rule constitutes a rule of reason that satisfies the first *TRAC* factor); *Cf. Liu v. Wolf*, 2020 WL 2836426 at *8 (S.D.N.Y. May 30, 2020) ("[T]his Court cannot find that the LIFO policy does not constitute a 'rule of reason.'").

Plaintiffs further argue that "the government's asylum backlog has not been decreasing but steadily increasing even after the LIFO system was adopted." Opp'n at 5. From 2014-2018, while USCIS was operating under a FIFO policy, the backlog of pending asylum applications grew from approximately 100,000 to over 300,000. *See*, Ombudsman Rep. at 43, fig. 4.3. Following the return to the LIFO system in 2018, the annual number of new affirmative asylum applications declined by nearly a quarter in 2018 from a peak in 2017. *Id.* at 44. As of April 2020, the backlog of pending asylum applications was 350,135, demonstrating that the rate of growth of the backlog over a two-year period has slowed significantly compared to the period from 2014-2018 under FIFO. *Id.* at 43, fig 4.3. These facts suggest that the LIFO system is an effective approach to "stem the growth of the agency's backlog." *See*, USCIS Announcement. As a court of this Circuit found

9

recently, "[i]t is true that the LIFO rule forces asylum applicants who filed earlier to bear the brunt of [] delays . . . . But this is a byproduct of a reasoned attempt to address mounting issues with the asylum application process." *Xu*, 434 F. Supp.3d at 53.

Moreover, courts have found that similar and even longer adjudication delays were not unreasonable under the APA. *See, e.g.*, *Saleh v. Ridge*, 367 F. Supp.2d 508, 513 (S.D.N.Y. 2005) (delay of almost five years not unreasonable); *De Oliveira v. Barr*, 2020 WL 1941231 at \*4 (E.D.N.Y. Apr. 22, 2020) (more than four-year delay not unreasonable). In any event, this Court has held that "evidence of the passage of time cannot, standing alone, support a claim of unreasonable delay." *Hoo Loo*, 2007 WL 813000 at \*4. These precedents, and the record of which the Court takes judicial notice, support a finding that the adjudication of asylum applications pursuant to LIFO is governed by a "rule of reason."

However, the inquiry does not end there, as the second *TRAC* factor informs the first. "[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason." *Id.* at \*4 n.4. Congress has supplied an indication of the speed with which it expects the agency to act in 8 U.S.C § 1158(d)(5)(iii), that is, within 180 days of the date an application is filed. However, the qualifying phrase "absent exceptional circumstances" in § 1158(d)(5)(iii) suggests that Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants. Further, the bar to a private right of action set forth in § 1158(d)(7), which applies to "this subsection," supplies additional evidence of Congress's intent that the timeline is not mandatory. Accordingly, the timeline in § 1158(d)(5)(iii) does not indicate that the LIFO policy is not a rule of reason. For the reasons discussed above, the Court finds that,

10

under the present circumstances, the first and second *TRAC* factors support Defendants' position that the adjudication of asylum applications pursuant to LIFO is a rule of reason.

The third and fifth *TRAC* factors concern the impact to human health and welfare, and the nature and extent of the interests prejudiced by the delay. *See*, *Hoo Loo*, 2007 WL 813000, at *4 n.4. Plaintiffs contend that their asylum status deprives them of peace of mind, of the ability to travel outside of the United States, and of the ability to petition for their family members to join them in the United States. *See*, Opp'n at 6. However, the Court must consider "competing priorities," such as "whether compelling the agency to focus its attention on one case would force it to shift resources away from equally deserving applicants." *Li v. Chertoff*, 2007 WL 4326784 at *6 (S.D.N.Y. Dec. 7, 2007). Plaintiffs fail to explain why the Court should compel the USCIS to adjudicate their asylum application before those that have been waiting as long or longer. The Court notes that "this sort of prejudice is inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved." *Xu*, 434 F. Supp.3d at 54. Significantly, Plaintiffs have not alleged that they have suffered any injury to their health or welfare. *See generally*, Compl.; Opp'n at 7. Accordingly, Plaintiffs have failed to allege plausibly that the third and fifth *TRAC* factors weigh in their favor.

Finally, the fourth *TRAC* factor provides that "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." *Hoo Loo*, 2007 WL 813000, at *4 n.4. The parties did not address meaningfully the impact on the USCIS of causing Plaintiffs' asylum application to be moved to the front of the line, and the Court recognizes that it is "institutionally ill-equipped" to "intru[de] into [agency] allocation of adjudicatory resources on the whole." *Pesantez*, 2015 WL 5475655 at *6 (quotation marks and citation omitted). In any event, a court may "refuse[ ] to grant relief, even though all the other factors

11

considered in *TRAC* favor[ ] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *L.M.*, 150 F. Supp.3d at 213 (citation and internal quotation marks omitted).

This is not to say that there is no amount of delay or possible set of circumstances where relief would be appropriate. While there is no bright line, "at some point, defendants' failure to take any action runs afoul of section 555(b)." *See*, *Kim*, 340 F. Supp.2d at 393. Given the circumstances of this case, however, the Court finds that the Plaintiffs have failed to state a claim for relief under the APA.

### C. Plaintiffs' Equal Protection and Due Process Claims

Plaintiffs allege that "Defendants' practices, policies, conduct, and/or failures to act as alleged in this Complaint violate the plaintiff's [sic] right to . . . equal protection of law protected by the Fifth Amendment to the United States Constitution" and that "[b]ecause of the delay by the Defendants in adjudicating their asylum application, they have suffered a violation of their due process rights." Compl. ¶¶ 46-47.

As to Plaintiffs' equal protection claim, the Amended Complaint contains no factual allegations, nor is the claim addressed in Plaintiffs' opposition to the motion to dismiss. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, by failing to address the claim in their opposition, Plaintiffs have abandoned the claim. *See*, *McLeod v. Verizon N.Y.*, 995 F. Supp.2d 134, 143-44 (E.D.N.Y. 2014) (collecting cases). Accordingly, Plaintiffs have failed to state a claim under the Equal Protection Clause of the Fifth Amendment.

As to the due process claim, Plaintiffs argue that Defendants have "seriously prejudiced Plaintiffs' health and liberty interests." *See*, Opp'n at 9. As an initial matter, "[a]liens within the

country 'are entitled to due process' and 'must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Xu*, 434 F. Supp.3d at 57-58 (quoting *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007)). As explained above, however, the Amended Complaint lacks sufficient allegations to allow the Court to evaluate Plaintiffs' health interest claims, and Plaintiffs fail to allege sufficient facts to implicate a liberty interest. The INA makes clear that it does not "create any substantive or procedural right or benefit that is legally enforceable by any party" against the government regarding asylum application timelines. *See*, 8 U.S.C. § 1158(d)(7). Furthermore, the Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon v. Plasenscia*, 459 U.S. 21, 32 (1982). As this Court has found previously, "[t]here is no cognizable 'Fifth Amendment due process claim on adjustment proceedings or other analogous discretionary benefit hearings.'" *Zhao v. Chertoff*, 2009 WL 700709, at *3 (E.D.N.Y. Mar. 15, 2009) (quoting *Gadria v. Gantner*, 2008 WL 650369, at *4 (S.D.N.Y. Mar. 6, 2008). Accordingly, Plaintiffs fail to state a claim for denial of due process.

**III.    Declaratory Judgment**

Finally, Plaintiffs seek a declaration that Defendants' "practices, policies, and failures to act . . . are: a violation of the INA, a breach of the Defendants' statutory duties, and are unconstitutional, arbitrary and capricious," and "that Defendants are compelled to adjudicate Plaintiff's asylum application in the next thirty (30) days." Compl. ¶ 44. Some basis must exist in another claim to accompany a declaratory judgment. *See*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The [Declaratory Judgment Act] is procedural in nature, and merely offers an *additional remedy* . . . in *any* 'case of actual controversy' . . . provided that the claim for declaratory relief is pleaded in accordance with Rules 8 and 10 of the Federal

Rules of Civil Procedure."). As the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted as to their other claims, Plaintiffs' request for a declaratory judgment too must fail.

## CONCLUSION

For the reasons set forth above, the motion to dismiss for lack of subject matter jurisdiction is denied and the motion to dismiss for failure to state a claim is granted. This action is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2020

/s/
DORA L. IRIZARRY
United States District Judge
